## Commonwealth, for Use and Benefit of Eversole, v. West et al.

(Decided Nov. 7, 1935.)

HOMER C. CLAY and A. H. EVERSOLE for appellant.

T. E. MAHAN and HIRAM H. OWENS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Five executions, aggregating $556.66, issued upon judgments of the Whitley quarterly court against the Whitley Grocery Company The several returns of the sheriff of that county by a deputy were:

"Executed the within fi. fa. by taking a replevin bond of the defendant Whitley Grocery Company, with E. G. Eversole and J. T Watkins as sureties. Said bond being dated January 28, 1933 and due ninety days from date."

Each bond was signed, "Whitley Grocery Company, by E. G. Eversole, President; E. G. Eversole, Surety; J. T. Watkins, Surety." They were indorsed, "Approved. Mart West, Sheriff, Whitley County, Ky., by C. S. Browning, D. S." Not having been paid at maturity and having the force and effect of judgments (section 1676. Statutes), executions were issued on the bonds against Eversole and sent to the sheriff of Laurel county for collection He levied them upon Eversole's automobile, whereupon he brought suits in the Laurel circuit court against the several judgment creditors, the judge of the Whitley quarterly court, and the sheriff of Laurel county to enjoin the collection of the executions. The basis of those actions was that Eversole's name had been signed to the bonds without his authority. The judgment creditors were not before the court, but the Whitley county judge and the Laurel county sheriff were, and default judgments were rendered in favor of the plaintiff; the replevin bonds being declared void and the collection of the executions being permanently enjoined.

This suit was then filed by Eversole, as relator of the commonwealth, against the sheriff of Whitley county and the sureties on his bond to recover $723.75, treble the damages which Eversole averred he had suffered (being the necessary expenses incurred in the foregoing suits, loss of time, etc.) on account of the alleged false returns on the executions issued on the original judgments. There was submitted to the jury, however, only the authority to find single damages of $241.25, and under the submission the verdict and judgment were for the defendants.

We are met at the beginning by the contention of the appellees that the Laurel circuit court had no jurisdiction to enjoin the collection of the executions from the Whitley quarterly court. Consequently, it is said, the

appellant had no cause of action for any damages he might have sustained by reason of those proceedings. This is based upon the provisions of section 285 of the Civil Code of Practice, declaring that an injunction to stay proceedings on a judgment shall not be granted in any other court than that in which the judgment was rendered. It is conceded that under the uniform construction of this statute, Eversole was authorized to enjoin the collection of a void judgment, but it is argued that the bonds involved were at most only voidable, since there was nothing on their face to show they were in any way illegal. We cannot agree. A forged instrument is a void instrument, and a void instrument is no instrument. There can be no legal right based upon it. Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 33 Ky. Law Rep. 98, 36 L. R. A. (N. S.) 456; Bement v. Commonwealth, 172 Ky. 452, 189 S. W. 466; Lowther Oil & Gas Co. v. McGuire, 189 Ky. 681, 225 S. W. 718.

No question is raised that neither the sheriff of Whitley county nor his sureties were bound by the judgments of the Laurel circuit court, since they were not parties to the suits. So it became proper and necessary in this case to try the issue of the integrity of Eversole's signatures to the replevin bonds, as they constituted the foundation of the sheriff's returns on the original executions, claimed by the plaintiff to be false.

The plaintiff was a traveling salesman residing at London. He was financially interested in the Whitley Grocery Company at Corbin, and was superseded as its president by Watkins, who was also the general manager of the business. Eversole denied having signed the replevin bonds or having authorized another to sign them for him. He had no knowledge of their existence until about two months afterwards, when Watkins told him, "We signed your name to some bonds here." He promptly advised him that it was without his authority, to which Watkins acceded. He took no steps to have the bonds canceled or to avoid payment, because he regarded them as void. It appears also that he relied upon Watkins' statement that the company could pay them. He admitted the signatures on the bonds were very similar to his genuine signature, which he executed before the jury for comparison.

Over the objection of the plaintiff, Browning, the deputy sheriff, testified that upon presenting the executions to Watkins, he said that he would take the bonds to London and get them signed. To this Browning responded, "That is not law for me to accept bonds like that." Watkins agreed, but stated that if he, Browning, should take them to Eversole, he would get excited and probably would not sign them, but that he, Watkins, could get him to sign them. Browning left the executions with Watkins and he returned them in a few days with the names thereon and advised him that Eversole had signed them. He was not familiar with Eversole's signature, and Sheriff West was not told anything about the transaction. This conversation and transaction with Watkins was prejudicially incompetent as evidence. Its admission was a clear offense against the hearsay rule. It is quite manifest that one is not bound by statements of a third party not made under such circumstances as would impute them to him. Indeed, the appellee makes no contrary contentions.

Watkins did not testify. There were some circumstances, including the similarity of plaintiff's genuine signature to those questioned, which tend to refute the plaintiff's claim of non est factum.

Instruction No 3 was in part a repetition of instruction No. 1, and further submitted that if the jury should believe from the evidence that the plaintiff "authorized another to sign his name" to the bonds, they should find for the defendants. There was no evidence tending to show that Eversole had done so. The instruction should have been omitted. It seems to us it would have been sufficient to instruct the jury, in substance, to find for the defendants, unless they should believe from the evidence that the plaintiff had not signed the bonds as surety. That was the sole issue in the case other than the amount of damages if the finding should be for the plaintiff.

A decision of other questions is reserved. Judgment reversed.